## CENTRAL NAT. BANK OF WACO v. LAWSON.

### No. 1060—5273.

Commission of Appeals of Texas, Section B.

May 7, 1930.

Spell, Naman & Penland, of Waco, for plaintiff in error.

Bryan & Maxwell and Tirey & Tirey, all of Waco, for defendant in error.

RYAN, J.

The Central National Bank of Waco, Tex., "acting by and through its liquidating committee of which W. H. McCullough is chairman," brought this suit against W. D. Lawson, to recover on a promissory note dated November 13, 1920, payable to said bank four months after its date.

Lawson pleaded that he was an accommodation maker for the bank itself, fraud of the bank in obtaining the note from him, and failure of consideration.

The case was submitted to a jury on the single issue of whether the bank through its president, McCullough, agreed with Lawson that he (Lawson) would never be called upon to pay the same or any interest thereon, and that said Lawson was simply lending his name to the bank in that manner for the purpose of relieving the bank from criticisms, if any, being made by the bank examiners. The jury answered "yes" to the question, and the trial court rendered judgment denying the bank any recovery, which was affirmed by the Court of Civil Appeals. 7 S.W.(2d) 915.

There was no other special issue requested, and although plaintiff bank objected in the trial court to its submission on the ground that as framed it is duplicitous in that several distinct questions are included in the one issue, that objection was not carried into the assignments of error submitted to the Court of Civil Appeals, nor in the application for writ of error granted by the Supreme Court.

The trial court, pursuant to the jury's finding in response to the special issue, further found that the bank was not a holder for value of the note sued on. This finding of the court, as well as that of the jury, is challenged on the ground that there was no evidence to sustain such finding and verdict.

The undisputed evidence shows that the Arrow Refining Company, a corporation, owed the bank a past-due note for $16,000. At that time McCullough, president of the bank, was also a director and treasurer of the Arrow Refining Company and a large stockholder therein; Lawson also owned stock in the refining company and was one of its directors. A bank examiner, then investigating the Central National Bank, demanded that this note be collected or charged off the books and advised the bank authorities that any notes having any kind of oil stock as security, no matter how good the man was, "had to come out of the bank." The examiner demanded "that any oil investment or any note representing an oil investment be taken out of the bank, and it made no difference whose it was—it had to be collected." Mr. McCullough testified that at that time the Arrow Refining Company had assets of something over $500,000 and liabilities of around $200,000.

Lawson's version of the transaction eventuating in his signing the note in question was that he had the utmost confidence in Mr. McCullough, who represented to him that the bank was being pushed on the refining company's note, the bank examiner had been after them and required the note to be paid off and something had to be done, and that as president of the bank he could not sign it. Mr. McCullough asked him to lend him his name to a note for a few days until arrangements could be made to pay off, which he thought would be but a few days, and to sign the note on that day on account of the bank examiner being then in town. Mr. McCullough also told him how he would get the money, mentioning two specific sales of property then pending and which would be closed in a few days, also some money to be obtained through exchange coming through the bank to be applied on the note. Lawson further testified that McCullough told him it was purely an accommodation note for which he received and asked nothing, on the strength of all of which he (Lawson) signed the note.

McCullough's version is that unless the note was given, suit would be brought by the bank against the refining company, which would be damaging to its credit and their investments in it, to save which Lawson signed the note and there was delivered to him the refining company's past-due note to the bank with the collateral thereto attached. McCullough further testified that Lawson then protested to him that he was taking more than his share of the burden and it would be unfair for him to stand all of it, whereupon he (McCullough) stated that "we don't either of us expect anything to happen, except that the assets will make it good, but if you feel that way about it I will give you my note for

three-fourths of it," and actually did make his note for $12,000 to Lawson.

It is uncontroverted that Lawson did not receive any money or anything else for signing the note, but there was afterwards handed to him the original refining company note to the bank with the attached collateral, and McCullough's personal note for $12,000, as above stated by Mr. McCullough.

Thus, the conflict between the testimony of Lawson and that of McCullough raised an issue of fact for the jury's determination. The jury found with Lawson, and that he was simply an accommodation signer of the note in question for the bank, and that it was accepted by its president with full knowledge thereof, and without any consideration being paid to him therefor.

■ Therefore Lawson is not liable to the bank, payee of the note. Article 5933, § 29, Rev. St. 1925; art. 5936, § 64, subd. 3; King v. Wise (Tex. Com. App.) 282 S. W. 570; Central Bank & Trust Co. v. Ford (Tex. Civ. App.) 152 S. W. 700, 701 (writ of error refused); 7 Cyc. 725. The party for whose benefit accommodation paper has been made acquires no rights against the accommodation party who may set up the want of consideration as a defense to an action by the accommodated party, since as between them there is no consideration. Parker v. Lewis, 39 Tex. 394; Lewis v. Parker, 33 Tex. 121; 8 C. J. 259.

■ But it is insisted that because Lawson was given possession of the original note and the collateral thereto attached, as well as the $12,000 note by McCullough, and has brought various suits to recover thereon and filed claim in a bankruptcy proceeding affecting the refining company and its assignee, he is foreclosed from denying liability on his note to the bank.

It was agreed in writing between the bank and Lawson that whatever moneys should be collected as the result of Lawson's filing proof of claim on the refining company's obligation, in the bankruptcy court and from the collateral notes, should be applied on the $16,000 note, and this without prejudice to the respective rights of said parties and without prejudice to the contention of the bank that Lawson is liable and Lawson's contention that he is not liable on said note. It was further agreed that the bank would not file suit on said note until after payment of final dividend by the trustee of the Arrow Refining Company. Therefore there is no element of ratification or estoppel shown against Lawson because whatever proceedings he took to realize, on the refining company's note to the bank and the collateral thereto attached, was in full accord with such written agreement as well as under directions from the bank specifying certain suits to be filed, and as to filing other suits, that was to be considered at a later date.

With reference to the suit against McCullough himself on the $12,000 note, which is still pending, this was not filed by Lawson until the day after the bank sued him on the $16,000 note, and on the last day before limitations of four years would have barred it. The bank's suit against Lawson was filed only one or two days before expiration of the limitations period, and if Lawson had not filed the suit against McCullough when he did, that note would have been barred.

If Lawson was not estopped, then the parties' original positions were not changed and he was free to plead and show failure of consideration, fraud, and that he was an accommodation maker for the bank.

It may be true that to satisfy the bank examiner, McCullough had the original refining company's note "taken out of the bank" and substituted therefor Lawson's accommodation note, but the enforcement of the former note and attached collateral, through Lawson and in his name, was expressly agreed in writing to be without prejudice to him, and the proceeds of such enforcement should be for the bank's benefit in the liquidation of the $16,000 indebtedness due it. The bank did not change its position for the worse, it parted with nothing, and retained its rights to all moneys that might be realized from the original note and collateral. Lawson made no representations which misled the bank. Clem C. Co. v. Parker (Tex. Civ. App.) 272 S. W. 228; Waxahachie Nat. Bank v. Beilharz, 94 Tex. 493, 62 S. W. 743. McCullough, the bank's president, was the active actor in the transaction, concerned principally in the satisfying of the bank examiner.

■ It is also insisted that parol evidence was not admissible to show a promise by the bank's president that he (Lawson) would never be called on to pay the note and Dolson v. De Ganahl, 70 Tex. 620, 8 S. W. 321; Denman v. Kaplan (Tex. Civ. App.) 205 S. W. 739; Fambro v. Keith, 57 Tex. Civ. App. 302, 122 S. W. 40; and Hendrick v. Chase Furniture Co. (Tex. Civ. App.) 186 S. W. 277, are cited in support of that proposition; but in all those cases the rule is recognized that parol evidence is admissible to show a failure of consideration. In Fambro v. Keith, the note was signed as an accommodation for a comaker, not as an accommodation for the payee, as in the instant case.

■ It is further insisted that as McCullough, president of the bank, was also interested in the Arrow Refining Company, McCullough's personal interests were adverse to those of the bank, notice to him and his actions therefore were not binding on the bank. It is true he was a large stockholder in and the treasurer of the refining company, but he did not have any duties to perform as such; on the other hand, he was the active president of the bank, performing all duties required of

him as such. The refining company, at that time, according to the testimony, was solvent and the note perfectly good; the only reason for "taking it out" was to satisfy the bank examiner. The making of that loan to the refining company was in no way adverse to the interests of the bank or of the company. In Goldstein v. Union National Bank, 109 Tex. 572, 213 S. W. 584, 593, Justice Greenwood tersely states the rule (in applying it to the facts of that case) as follows: "The bank could not act alone through its vice president and general manager * * * and escape the consequences of the knowledge of its vice president and general manager."

Chief Justice Phillips' dissenting opinion in that case is based upon a premise that the effect of the transaction was to divert a security which the bank had for the millinery company's debts, for the private benefit of the bank's vice president and another. It is not so here. McCullough was not obtaining any private benefit; his only object seems to have been to satisfy the bank examiner. Lawson obtained no private benefit; he incurred a potential personal liability by yielding to the representations and promises of the bank's president, and the proceeds of the original note and its affiliated collateral was agreed to be used in payment of the $16,000 indebtedness.

As correctly held by the Court of Civil Appeals: "Where a president of a bank is an officer in another corporation, and the two corporations deal with each other, it does not follow, as a matter of law, that notice to the president is not notice to the bank. City National Bank v. Merchants' & Planters' National Bank (Tex. Civ. App.) 105 S. W. 338; Cherry v. First Texas Chemical Mfg. Co. (Tex. Civ. App.) 144 S. W. 306 (error refused); Pemiscot County Bank v. Central State Nat. Bank, 132 Tenn. 152, 177 S. W. 77; 14A C. J. 125; 7 R. C. L. 444."

It is further contended that because Lawson filed the admission required under District Court Rule 31, and therefore obtained the right to open and conclude in adducing his evidence and in the argument, he is by reason of such admission concluded from establishing any fact as against the written promise to pay, which would defeat its recovery.

As said by Judge Gaines in Smith v. Traders' National Bank, 74 Tex. 545, 12 S. W. 221, 222:

"The manifest purpose of this rule was to secure to a defendant the right to open and conclude when, upon the real issues in the case, the burden of proof rests upon him; that is to say, when his defense is in the nature of a confession and avoidance of the plaintiff's action he is permitted to admit the prima facie case of the plaintiff, although it is denied by his pleadings, and to open the case by introducing evidence to establish the affirmative defense he has set up. The rule is intended to secure a valuable right, and is just, and it should have a reasonable and practicable application. To construe it so as to accomplish in a reasonable and practical manner its object, an admission made in the very language of the rule must be construed to mean that the defendant admits every fact alleged in the petition which it is necessary for the plaintiff to establish in the first instance to enable him to recover; but does not admit allegations in the petition which merely deny new matter alleged in the answer, the burden of proof of which is upon the defendant. Any other construction would enable the plaintiff to deny the defendant the right to open and conclude upon his affirmative defense by simply amending the petition, as was done in this case, and alleging the contrary of the defenses set up in the answer.

"The answer in this case set up a defense in confession and avoidance of the action. 1 Chit. Pl. 515. The plaintiff was not bound to allege in its petition that it became the holder of the note for a valuable consideration without notice. It was incumbent upon the defendant, in order to make his defense, to show the contrary. He was bound to allege and prove the want of consideration, and that the plaintiff had notice when it became the holder of the note. In admitting the plaintiff's cause of action, 'except in so far as it may be defeated by the facts of the answer,' etc., he does not purport to admit the allegations of the petition, but merely to admit that the plaintiff has a prima facie case, and expressly declines to admit any fact inconsistent with the new matter alleged in his answer."

So here Lawson simply admitted all the facts necessary for the bank to have proved in order to entitle it to a judgment, namely, that he had executed the note in controversy, but that does not preclude his alleged defense that it was an accommodation note, given without any consideration, and therefore unenforceable against him.

The admission only covers such matters which the plaintiff must have proved to sustain his cause of action and does not include matters which the defendant is required to plead and prove as defenses. Swift v. Mounts (Tex. Civ. App.) 295 S. W. 932; Mason v. Peterson (Tex. Com. App.) 250 S. W. 142, 147; Dashiel v. Lott (Tex. Com. App.) 243 S. W. 1072; Smith v. Frost (Tex. Com. App.) 254 S. W. 926; Payne v. Beaumont (Tex. Civ. App.) 245 S. W. 94, 100.

In this case Lawson pleaded two complete defenses, one of failure of consideration, which includes that of accommodation maker, and one of fraud. These are pleas in confession and avoidance which, if sustained by proof, constitute a good defense, the exception contemplated by Rule 31, and not included within the admission; the burden of prov-

ing such defense being upon the defendant Lawson, who therefore under the rule has the opening and closing in adducing his evidence and in the argument.

The jury having found that the bank agreed with Lawson at the time he signed the note in controversy that he was only an accommodation maker by simply lending his name to the bank in that manner for the purpose of relieving the bank from the bank examiner's criticisms, and that finding having support in the evidence, the trial court correctly rendered judgment denying the bank any recovery.

█ No objection to the form of the question was made in the Court of Civil Appeals; the two propositions included therein, (a) Promise of the bank not to call for payment from Lawson, which of itself may not be a defense under the authority of Dolson v. De Ganahl, 70 Tex. 620, 8 S. W. 321, and (b) the lending without consideration and as an accommodation, by Lawson, of his name to the bank, which, if proven, is a complete defense against the bank, were conjunctively stated, so that the burden placed on Lawson was heavier because of the first than required under the second. Of this the bank cannot complain; the jury's finding supported the latter proposition complemented with the added burden of the first.

We recommend that the judgments of the trial court and Court of Civil Appeals be affirmed.

CURETON, C. J.

Judgments of the Court of Civil Appeals and district court are both affirmed, as recommended by the Commission of Appeals.